Our first case this morning is 21-12-94, Guadiana v. City and County of Denver, and Ms. Catalano for the appellant, you may proceed. Good morning, your honors. May it please the court, my name is Sherry Catalano, and I represent the City and County of Denver in this appeal. Plaintiff Vepelli, in this case, was an employee of the Denver Department of Human Services in the Family and Adult Assistance Division. While she was employed at Human Services, her responsibility was to determine eligibility benefits for Medicaid recipients for Denver County residents. Her responsibility was to determine eligibility for Medicaid benefits for Denver County residents. The question before you today is whether the City and County of Denver is entitled to 11th Amendment immunity when it is acting through its agency, the County Department of Human Services, which has been found to be an arm of the state of Colorado by the Tenth Circuit and by numerous district courts in this circuit. As you know, the 11th Amendment bars federal court jurisdiction over private suits against a state by citizens of that state unless Congress has abrogated the state's immunity or unless the state has waived its immunity. In Garrett, the Supreme Court held that states enjoy 11th Amendment immunity in ADA lawsuits brought by state employees. She didn't sue the Department of Health, she sued the City. That's correct, your honor. Yes. And we're here on a motion to dismiss. Is it an alter ego theory? Are we piercing the corporate veil? Yes. How do you want to phrase it? And how do we get there at this stage in litigation? Yes, your honor. So we are operating on the City and County of Denver is an agent of the state when it's operating through its agency, the Department of Human Services, which is an alter ego or an instrumentality of the state. There's actually 40 years of precedent, state and federal precedent, establishing that DHS, the Human Services Department, is an arm of the state of Colorado entitled to 11th Amendment immunity. I mean, in those cases, though, wasn't there something? I mean, because we sort of have a hard, hard, hard cutoff here at the complaint. So in those other cases you're talking about, wasn't there something else indicating that it was actually the Department of Health and Human Services as opposed to just a generic city employee? Yes. And that's what we have here as well, your honor. So this is a human services employee who was responsible for determining Medicaid benefits, which is a state program. Tell me what in the complaint is going to take us away from the city as employer to agent of the state as employer. Yes. So we do say the city and county of Denver is an employer of the plaintiff. Okay. So Denver Human Services is where she actually did her job. That's where she came into work every single day. The agency, she was hired by agency employees. Her work product, all of her work was done in the agency. The ADA accommodation was approved by the agency, all of the agency leadership. The decision to hire her and terminate her was done by the agency, which is an arm of the state. Eighty percent of the Department of Human Services is funded by the state, and her payroll would have come out of the HICPUF budget. Is all of that in the complaint, what you just recited? So, yes. So they acknowledge in the complaint that she was an eligibility technician, that she worked, that she was hired and terminated by agency employees, that she completed human services. She didn't say that. I mean, that's your take. You're adding to that, aren't you? I mean, she artfully pled her claim in the complaint to avoid what you're telling me, right? I mean, she put in there, I was employed by the city, these were city employees. She was very careful not to basically out herself as an employee of DDHS. Right. So the fact that they pled this artfully does not take away that she was a DHS employee, that she went into work every day at the agency and completed eligibility benefits, that 80 percent of her payroll was paid by the state. One thing I want to point out is the case law that talks about plaintiffs trying to make the argument and looking at the arm of the state analysis that an entity is not an arm of the state because it had some centralized control over personnel by the county or the municipality that actually hired them. And the courts rejected that argument and said that we're not concerned about the ministerial duties of the HR department, right? And that's what the plaintiff is focusing on here is the advisory duties of the HR department and the fact that the plaintiff received information or discussed her ADA accommodation with a member of HR. But the decision wasn't made by HR. Isn't your position that she's a joint, or that the city and the health department are joint employers of her? Yes. And it's our position that the immunity is coextensive with the city and county of Denver because the plaintiff was a state agent or a state actor. If you look at cases. But the city pays 20 percent of her salary? So 20 percent of her salary would come from other sources, yes, than the state. What sources? Probably tax, yeah. Say again? City taxes. City taxes, yeah. And who provides her benefits? The benefits are provided by the city and county of Denver, but it's provided to all other agency employees. I wanted to make clear that every single plaintiff that has ever come before the federal court with an arm of the state argument, I'm sorry, every single defendant with an arm of the state argument from human services, those cases have been dismissed, even though they were city and county of Denver employees. Did any of those other cases sue the city? Directly, yes. Rather than the health department? Yes. So there were cases. Jackson v. City and County of Denver was one. That was an ADA case. The ADA claim was dismissed on sovereign immunity grounds because it was administrative, they were late in their filing. But they had a 1981 case, or 1983 rather, civil rights case that was dismissed against the city and county of Denver on 11th Amendment immunity grounds. The Department of Human Services was not named in that complaint. And the court dismissed the city out of that case based on the arm of the state analysis and the fact that the human services, that the employee was a human services employee. If this case somehow went forward and she obtained a judgment against the city, against the defendant, who would pay that judgment? So it's not entirely clear the percentage of the amount that would come from the agency. Sorry, let me back up. The agency would pay for the settlement or judgment. It would come out of an agency budget. It's just not clear what percentage of that funds would be state funds versus county funds, if that makes sense. So it would come from the agency. It's not coming from the city council. It's not approved by the city and county of Denver. It would be coming out of an agency budget. And how do we know that? I mean, I'd take your word for it, but how do we know that? Well, based on my experience representing the agency in the past, but I don't have something to present to you today to say. Wouldn't there be something in the contract between the health department and the state of Colorado on this sort of thing? I'm sorry, can you? Wouldn't there be some contractual language that might give us guidance? Or is the theory that judgments don't happen because you've got sovereign immunity? Well, no, we certainly have settlements and judgments with the agency and obviously other types of cases. But, you know, in this case, I mean, I can't speak to sort of a law or policy that specifically says the state will contribute a certain amount. I'm not sure about that. But I do know that there is a legal budget with the agency where they pay out  which is a state actor, has been found to be a state agent or instrumentality. So I guess my concern is a lot of what I'm hearing from you has to do with positions that we can't discern from the complaint. And I'm just wondering how we're supposed to deal with that on a facial attack 12B6. Your Honor, absolutely. So in the complaint, though, there are specific factual allegations that they agree with that make our case here. The fact that she was an employee of the City and County of Denver Department of Human Services. She worked for Department of Human Services employees, again, whose payroll is paid by the state. Eighty percent of their payroll would have been paid through HICPUF as well, the Colorado Department of Health Care Policy and Financing, because she was involved in Medicaid. And Medicaid is a state-run plan. It's controlled by the state. It's monitored by the state. The agency itself, if they're failing, they have to go to the state and the state can take over. You know, they can audit all of the things that DHS is doing, and they can actually take over operations. And then they would be in charge of the plaintiff if she was working. If the state paid one percent of her salary and the city 99 percent of her salary, you know, because of some arrangement, would that person, or would the city health department still be entitled to sovereign immunity? Your Honor, there are four factors that you have to look at, the Mount Healthy factors that determine whether an entity is considered an arm of the state. One of the factors is funding, but there are three other factors. The other two are how the entity is construed in state law, and also how much control the state has over that entity. And in both cases of those two other factors, the state has a ton of control over the agency in statute, in rule, and it's constantly monitored, like I said, and also state law states that the county departments of human services are an agent of the state. In my hypothetical, how would the Mount Healthy factors cut? I think that would cut towards the funding piece, number three, which then would be obviously a factor against us in that determination, but that's not the case. We do have 80% funding that comes from the state. I think $29.1 million came directly to the county administration budget from the state treasury for Medicaid programs and other federal programs, and I think that's out of $129.1 million in state funding that comes to DHS each year. The health department, they've outsourced HR benefits, hiring, and that's all outsourced to city employees, as I understand the fact pattern here. That's correct, Your Honor. They changed that in 2003 so that those were all managed by the county, but like I said, the courts, the lower courts have looked at this issue and determined that those ministerial HR functions were not determinative of whether that entity was an arm of the state and the fact that it was controlled by a county or a municipality in terms of personnel functions. But what if discrimination is perpetrated by a city employee, say HR retaliates? Why wouldn't her suit be against the city and the county properly? Your Honor, that's because the decision-making was not by that city employee. The decision-making was by the agency, the agency employees. They hired her. They would have accommodated her. The plaintiff cites Wilma Springer in HR as someone who might have been discriminatory. So a city employee could retaliate against an employee of the health department, up to getting the employee fired, and there would be no remedy because that retaliatory conduct would be ratified by the health department, which would be entitled to sovereign immunity. Well, two things, Your Honor. One, they would not have made that decision to fire her. They're only in advisory capacity. They can make recommendations about accommodations or about other things, but they don't make the final decision. And two, it would be the same as any other state agent or employee who cannot avail themselves of the federal courts in an ADA claim. I'd like to reserve my 32 seconds. You've got your 30 seconds. Sorry, I took some of your time. Thank you so much, Your Honor. All right. Let's hear from the plaintiff, Ms. DeFazio. May it please the Court, good morning. My name is Ariel DeFazio, and I am counsel for the appellee, Kristen Guadiana. The city and county of Denver and the Denver Department of Human Services are legally distinct entities that can be sued separate and apart from one another. Ms. Guadiana was hired, given benefits, and paid by the city. When her supervisor wanted to extend her probation, she sought the authorization from the city to do so twice. And when Ms. Guadiana disclosed that she had a disability that potentially impacted her work performance, it was the city, through its Office of HR, Human Resources, and ADA coordinator who engaged in that interactive process and explored various reasonable accommodations and ultimately approved several pieces of adaptive equipment for her to use and also mentioned that if she was still unable to do the essential functions of her job, reassignment to a vacant position within either the DDHS or an agency or department within the city would be appropriate. Do you agree that the Health Department is protected by sovereign immunity? Your Honor, we don't necessarily concede that the DDHS was or is an arm of the state, and that's just because it has not been explicitly decided by the Tenth Circuit, but there have certainly been district courts that have come to that conclusion. Let's assume that it is an arm of the state. Why can't it outsource some of the human resources management activities to traditional city departments without losing that sovereign immunity protections? Well, if it did outsource, which I'll just make a quick note that a number of the components of my opponent's argument regarding the 80 percent of payroll and who is the final decision maker and this advisory capacity piece, those are not in the factual record. So they were not offered at all in response to the motion, with the motion to dismiss, and just are not contained within the record. That aside, to answer your question, I think it's less a component of outsourcing and more of at worst, excuse me, we have two entities that could potentially be joint employers because of their independent actions. So the DDHS provided that they did have some sort of capacity with respect to terminating Miss Guadiana, hiring her, supervising her daily work. The city still has its own actors that independently engaged in what we believe was a premature termination of the interactive process and ultimately agreeing to terminate her pursuant to the career services rules. So at worst, we have two entities that are joint employers under the ADA. And that does not mean that just because the DDHS may be an arm of the state and immune from the ADA under the 11th Amendment, that does not necessarily cloak the city and county of Denver in the same immunity that its agency receives in some circumstances. Do you agree with what Miss Catalano said, that 80% of her salary comes from the state and 20% from the city? I don't, Your Honor. Is that in the record? It's not, Your Honor. It is not in the record. Let's assume that that's true. Doesn't that tend to show that the true employer is the health department? Well, the analysis is who controlled the terms and conditions of Miss Guadiana's employment. And it could be that if a majority of, let's say, assuming that's true, a majority of her payroll was paid out by the Denver Department of Human Services, it may be that that component, her pay, was controlled by the DDHS. However, her benefits, her application under the career services rules, the accommodations that she received in the interactive process, those were monitored and controlled by the city. But under your theory, then, I assume that every employee of the health department, then, would be jointly employed by the city and county of Denver. So the health department essentially would never get any sovereign immunity. Well, I think it's possible that multiple employees would be jointly employed by the city and county of Denver and the Denver Department of Human Services. But it depends on the instances, because there certainly are other cases that Miss Catalano discussed that came up against the city and county of Denver. And, in fact, really the Denver Department of Human Services was the employer actor. So, for instance, in Jackson, that plaintiff brought the case against the city and county of Denver, but eventually, in the course of litigation, although we don't know exactly when, clarified that she, in fact, was bringing her case against DDHS. So the actions of which she complained of that were allegedly discriminatory were those of DDHS employees. And the same was true for Bettis. In that case, although that plaintiff brought her case against the city and county of Denver, the actions of which she complained really pertained to the Denver Department of Human Services. So I think there are instances where those people may have been paid by the city and given W-2s by the city, but perhaps the terms and conditions of their employment were really controlled by DDHS rather than the city. Let me drill down on something that's sort of an offshoot of what the two of you have been talking about. And I want to assume that we're here on a grant for the city of a summary judgment motion. And in the record is an affidavit from the city. And the affidavit says that 80% of your client's salary is, in fact, paid by the city, and that the ultimate hiring and firing decisions of your client are made by DDHS and not by another arm of the city. And that the ultimate decision on whether accommodations will be made will be facilitated, while facilitated to some degree by the city, will be made by DDHS. And that in the event that there was a jury verdict and damage award entered against DDHS or the city in favor of your client, that the state would be responsible for the damage award. Where does that put you? Well, Your Honor, we're here in a very different posture. No, I understand. But what I'm trying to figure out is are we just jousting about whether something was in the complaint or not? Because the city has a lot of other things they want to talk about that aren't necessarily in the complaint. And so if we're just jousting about the complaint, maybe my view of your case is entirely different than if your position is, well, even if those things are in there, I'm still going to win. Because then I think I've got some other questions for you about, well, tell me about, are there any cases? Well, first answer my question. Sure. Do you still feel like you have this dead winner if that affidavit's in the record and this is decided on summary judgment? Well, of course it depends on the other facts that come out in the course of discovery since that's quite a bit of a possibility. Let's assume they're as pled in your complaint with the addition of this affidavit. Then we have actions on behalf of the city according to which they can be held independently liable under the ADA than the Denver Department of Human Services. Okay. So you still think, I mean, even if we had an affidavit with those things in it, you still think you've got a winner? Yes. All right. So, all right. Well, then I don't have a follow-up. Okay. And I would just like to make a note that we're here on an extremely limited factual record at the city's choosing. They obviously had the option to do a facial attack or a more substantive attack in their 12B1, and it was the former. So we're just limited to the four corners of the complaint. As a municipal corporation, the city is just not immune from an ADA suit under the 11th Amendment. The 11th Amendment protects the state and arms of the state from suit unless there's been some sort of waiver or an abrogation of that immunity. And the city's immunity isn't changed by the fact that one of its agencies happens to have been found to be immune by several district courts. And there's just no legal precedent that allows the city to adopt the immunity given to one of its agencies. And to the contrary, Tenth Circuit law holds that that is not the case, that, in fact, cities and counties are subject to a suit, especially under the ADA, which Garrett, the 2001 Supreme Court case, stated. And the impact of this case goes well beyond just Ms. Guadiana's ability to pursue her claims. Should the court credit the city's argument and find that just because she performed some of her work at the Denver Department of Human Services, that that renders the city immune, it would impact the ability of public employees to access their rights under the Americans with Disabilities Act? Let me ask you about that. So you just said just because she performed some of her work at the department, DDHS, did she perform work for any other department? Or was it solely for DDHS? It was solely for DDHS. Okay. So we're not dealing with a situation where she is an employee who maybe had shared responsibilities among departments? That's correct, Your Honor. Okay. So first, the first kind of rung of consequence would be that, obviously, city employees who are employed by the city, paid by the city, given benefits, but perform their work at the Department of Human Services, would not be able to avail themselves of their rights under the ADA. Not only that, but other civil rights laws, such as the Age Discrimination and Employment Act, the self-care provision of the FMLA, the Fair Labor Standards Act and Sections 1981 and 1983. The level beyond that would be other departments and agencies within the city and county of Denver that have been held to be arms of the state, such as municipal courts, the sheriff's office, probation departments. And even beyond that, we have 63 other counties in Colorado, each of which has their respective Department of Human Services and other agencies that are potentially deemed arms of the state. And none of those individuals, if this court extends, expands that sovereign immunity coverage, would be able to avail themselves of their civil rights in a number of those very important statutes. So the effect of expanding sovereign immunity here would be to contract the civil rights of a wide swath of public employees. And so under your theory of the case, it wouldn't matter if it were clear that 100 percent of her job duties and performance were clearly carrying out state activity. The fact that some of the funding and benefits come from Denver, the city, kind of obviates that fact, even applying the Mt. Healthy factors. That's correct, Your Honor, because in order to be an employee under the ADA, you can control other terms and conditions of someone's employment other than just their daily work benefits. And then here, specifically, the interactions around the interactive process. It was the city's ADA coordinator from its Office of Human Resources that that was the representative of the city in the interactive process. And so that conduct, separate and apart from where Ms. Guadiana's pay came from, can also, under that, the city can be held independently liable under the ADA. What if the record demonstrated, I mean, I'm not telling you, I'm thinking ahead. What if you get past this and you're back in the district court, and the factual record as borne out by discovery demonstrates that the city's ADA coordinator was acting in a very ministerial capacity, only taking direction from DDHS? Well, I frankly, and this is delving a bit into facts that are not in the record, but I would be surprised by that given that the ADA coordinator is a position that is in the city charter. It is responsible primarily for the interactive process and for making recommendations about reasonable accommodations. And it was based on Ms. Springer, the ADA coordinator's observations of Ms. Guadiana's work flow, what kinds of accommodations would be helpful to her. So she made those recommendations. They ultimately decided on what accommodations would be provided for her. And then the process was terminated, we allege prematurely. So it would be difficult to credit that because I think her role was more than ministerial. Right. Yeah, I have no idea what the record would show on that because it's not been made yet. Sure. It was hypothesized. Yes. Yeah, and of course, again, we are here on a very limited factual record, and it just would be inappropriate to make determinations based on a very undeveloped factual record. So what we have in the amended complaint, the district court found, was enough to allege that Ms. Guadiana was an employee of the city as opposed to the DDHS. Obviously, there could be issues that come up further along in the case, but as things stand now, she's properly alleged that the city was her employer and it is not immune from suit under the ADA. And then with respect to the Mount Healthy factors, applying those to the city, even in this circumstance, there just seems to be no possible way that it would be held to be an arm of the state because the Mount Healthy and Steadfast factors concentrate mostly on the entity's autonomy with respect to the state from finances and control. And the city and county of Denver is a home rule city. It is constitutionally protected from interference by the state. And I'll thank you for my time. Thank you, counsel. We appreciate your argument. Ms. Lee, if you could give one minute in rebuttal, if you want it. Thank you, Your Honors. Hold on a second until we get started. Thank you, Your Honors. Just very quickly, I just wanted to mention that Plaintiffs' Counsel has talked about what Ms. Springer was doing. Obviously, some of these things are not in the factual record. But she did concede that they were recommendations, right? They were observations that she made and she made recommendations to the agency. The ultimate decision maker would have been agency leadership, would have been her supervisor, her manager, the deputy division director, and ultimately the overall decision maker of DHS, which is the executive director, and that's the appointing authority under the charter. So the executive director of the agency is the last person who is looked to for disciplinary issues for these types of decisions. So the ADA accommodation would have been decided by the agency as well as any decision on termination. I had other things I would like to say. Thank you, counsel. We appreciate your arguments. I think we have a firm feel for the respective positions. We appreciate the fine arguments. You may be seated and excused and the case will be submitted.